UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

KENNETH E. SHELTON,

    Petitioner,

v.

J.A. BARNHART, Warden,

    Respondent.

No. 6:19-CV-12-REW

OPINION AND ORDER

\*\*\* \*\*\* \*\*\* \*\*\*

Kenneth Shelton, an inmate at FCI Manchester, filed a *pro se*[1] petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, broadly contending that he is no longer a career offender in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016). *See* DE #1. The matter is ripe for initial screening, per 28 U.S.C. § 2243.

The Court "has a duty to screen out a habeas corpus petition which should be dismissed for lack of merit on its face." *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970). The Court dismisses at screening "when the petition is frivolous, or obviously lacking in merit, or where . . . the necessary facts can be determined from the petition itself without need for consideration of a return." *Id.*; *see also Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011) (describing screening process and standard).

In July 2013, Shelton and an accomplice robbed First Financial Bank in Farmersburg, Indiana. *See* DE ##1 (Complaint), 19 (Indictment), case no. 2:13-CR-29-

---

[1] The Court evaluates *pro se* filings under a relatively lenient standard. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

WTL-CMM (S.D. Ind.). A federal grand jury charged each with violating 18 U.S.C. § 371 (conspiracy to commit bank robbery), and 18 U.S.C. § 2113(a) (bank robbery). *See id.* Shelton pleaded guilty to both charges. *See, e.g.*, DE #79 (Plea Agreement), case no. 2:13-CR-29-WTL-CMM. At sentencing, Shelton did "not contest the [USPO's] career offender determination." DE #92 (Sent. Memo.), at 2, case no. 2:13-CR-29-WTL-CMM. Judge Lawrence, in October 2014, imposed a total 160-month sentence. *See* DE #94 (Judgment), case no. 2:13-CR-29-WTL-CMM.

The Guidelines in effect at the time of Shelton's sentencing provided that a defendant is a career offender, as relevant here, if "(1) [he] was at least eighteen years old at the time [he] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is . . . a crime of violence . . .; and (3) [he] has at least two prior felony convictions of . . . a crime of violence[.]" U.S.S.G. § 4B1.1(a) (Nov. 1, 2013). Shelton nowhere contests element 1. *See also* DE #120 (Sent. Tr.), at 5 (Judge Lawrence noting that Shelton was "at least 18 years old at the time of the instance offense"), case no. 2:13-CR-29-WTL-CMM. The Guidelines defined "crime of violence" to mean, as relevant, "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" U.S.S.G. § 4B1.2(a)(1) (Nov. 1, 2013).

In June 2016, Shelton moved to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that *Johnson v. United States*, 135 S. Ct. 2551 (2015), rendered invalid the career offender enhancement. *See* DE #1, case no. 2:16-CV-250-WTL-DKL (S.D. Ind.). The district judge ultimately (post-*Beckles*) denied the effort, *see* DE #10, case no. 2:16-CV-

250-WTL-DKL, and the Seventh Circuit denied certificate of appealability issuance. *See* DE #22, at 3, case no. 2:16-CV-250-WTL-DKL.

In the present § 2241 petition (DE #1), Shelton essentially contends that, in light of *Mathis*, the career offender enhancement is improper—in his words, that "*Mathis* has rendered application of the career offender enhancement erroneous[.]" DE #1, at 5. He argues that convictions under 18 U.S.C. § 2113(a), his "offense of conviction," *see* DE #1, at 5, and (predicate) Indiana Code § 35-42-5-1 no longer properly constitute crimes of violence. *See generally* DE #1-1 (Memorandum of Law). As remedy, Shelton seeks sentence vacation and resentencing "under correct guideline range without the erroneous imposition of the career offender enhancement." DE #1, at 8 (all as in original). For distinct procedural and substantive reasons, the Court denies Shelton relief.

As an initial matter, Shelton's petition constitutes an impermissible collateral attack under *Hill*. A prisoner must generally challenge a federal conviction or sentence by filing a § 2255 motion in the court of conviction. *See, e.g.*, *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 2003). Under a narrow exception to this overarching rule, a prisoner in Shelton's general circumstances may challenge an alleged sentencing error in a § 2241 petition only if he "show[s] (1) a case of statutory interpretation, (2) that is retroactive and could not have been invoked in the initial § 2255 motion, and (3) that the misapplied sentence presents an error sufficiently grave to be deemed a miscarriage of justice or a fundamental defect." *Hill v. Masters*, 836 F.3d 591, 595 (6th Cir. 2016). Thus, in another formulation, *Hill* clarified that it "addresse[d] only a narrow subset of § 2241 petitions: (1) prisoners who were sentenced under the mandatory guidelines regime pre-*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), (2) who are foreclosed

3

from filing a successive petition under § 2255, and (3) when a subsequent, retroactive change in statutory interpretation by the Supreme Court reveals that a previous conviction is not a predicate offense for a career-offender enhancement." 836 F.3d at 599-600.

The Court does not question, at least at this stage, that Shelton satisfies some *Hill* prongs. *See, e.g.*, *Sutton v. Quintana*, No. 16-6534, 2017 WL 4677548, at *2 (6th Cir. July 12, 2017) (holding in the § 2241 context that "*Mathis* is a case of statutory interpretation" and that "*Mathis* applies retroactively").

Shelton, however, fatally falters on other *Hill* requisites. He does not show—even assuming he is no longer properly a career offender—that his sentence, imposed under advisory Guidelines, "presents an error sufficiently grave to be deemed a miscarriage of justice or a fundamental defect." *See Hill*, 836 F.3d at 595. The Circuit has explicitly held that erroneous application of a career offender enhancement under advisory Guidelines is not itself a "fundamental defect" or a "miscarriage of justice." *Snider v. United States*, 908 F.3d 183, 189-92 (6th Cir. 2018).[2] That decides the issue and precludes Shelton's extended advocacy effort to the contrary. *See* DE #1-1, at 2-7.[3] *Hill*'s requirement of pre-*Booker*

---

[2] *See also, e.g.*, *United States v. Foote*, 784 F.3d 931, 932 (4th Cir. 2015) (same); *Spencer v. United States*, 773 F.3d 1132, 1135 (11th Cir. 2014) (en banc) (same); *Hawkins v. United States*, 706 F.3d 820, 824-25 (7th Cir. 2013) (same); *Sun Bear v. United States*, 644 F.3d 700, 704-06 (8th Cir. 2011) (en banc) (same); *United States v. Williamson*, 183 F.3d 458, 461-62 (5th Cir. 1999) (same).

[3] Shelton does not acknowledge or grapple with *Snider*. The Supreme Court has abrogated the cases on which he principally relies. *See* DE #1-1, at 2 (citing *United States v. Madrid*, 805 F.3d 1204 (10th Cir. 2015)*, abrogated by Beckles v. United States*, 137 S. Ct. 886 (2017)); *id.* at 6-7 (citing *United States v. Pawlak*, 822 F.3d 902 (6th Cir. 2016)*, also abrogated by Beckles*). Shelton's argument that whether the Guidelines are mandatory or advisory is a "distinction without a difference," *see* DE #1-1, at 2, 7, simply ignores the current state of the law. *See, e.g.*, *Beckles*, 137 S. Ct. at 892-95 (*e.g.*, "[T]he advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory

sentencing is, thus, effectively (in a case of this type) just a restatement (in more specific form) of the third prong of the more generally-phrased test. *See, e.g.*, *Jones v. Batts*, No. 2:18-cv-2464-TLP-tmp, 2019 WL 254244, at *2 (W.D. Tenn. Jan. 17, 2019). Serving a sentence imposed under a *mandatory* Guidelines range, calculated erroneously—particularly post-*Snider*—is how a prisoner like Shelton satisfies *Hill* prong three.

Judge Lawrence sentenced Shelton in 2014, long after *Booker* rendered the Guidelines advisory. *See* DE #93 (Sent. Minutes), case no. 2:13-CR-29-WTL-CMM; *see also* DE #120 (Sent. Tr.), at 4 (the district judge telling Shelton that "these guidelines are simply advisory" and "are not mandatory"), case no. 2:13-CR-29-WTL-CMM. Shelton's sentence (13 years, 4 months) falls well under the statutory maximum (25 years). Under *Hill*, Shelton's post-*Booker* sentencing independently precludes—regardless of any other issue—the availability of § 2241 relief, in context. *See* 836 F.3d at 599-600 (limiting application of decision to, *inter alia*, "prisoners who were sentenced under the mandatory guidelines regime pre-[*Booker*]"); *Burgess v. Merlak*, No. 17-4147, 2018 WL 5778364, at *1 (6th Cir. June 22, 2018) ("*Hill* is inapplicable to this case because Burgess was sentenced in 2012, after the guidelines became advisory."); *Pittman v. Quintana*, No. 16-6857, 2017 WL 6759113, at *2 (6th Cir. Sept. 18, 2017) (same principle); DE #18 (Sixth Circuit Order), at 3, *Arroyo v. Ormond*, No. 6:17-CV-69-GFVT, *aff'd*, No. 17-5837 (6th

---

range."); *Snider*, 908 F.3d at 191 ("[U]nder the advisory guidelines scheme, a career offender designation is, unlike a statute, only 'one part of a series of guidelines meant to *guide* the district court to the proper sentence,' from which district courts are free to vary." (emphasis in original)); *id.* (noting that "although" an erroneous "career offender designation may . . . affect[] the ultimate sentence imposed, it d[oes] not affect the lawfulness of the sentence itself" (internal quotation marks and alteration removed)); *id.* at 192 n.5.

5

Cir. Apr. 6, 2018) ("Arroyo was sentenced in October 2006, after the Supreme Court's decision in *Booker*[.] On this basis alone, Arroyo's claim does not fall within *Hill*'s limited exception for bringing a § 2241 habeas petition to challenge a federal sentence."); DE #16 (Sixth Circuit Order), at 2-3, *Contreras v. Ormond*, No. 6:17-CV-329-GFVT, *aff'd*, No. 18-5020 (6th Cir. Sept. 10, 2018) ("Contreras's § 2241 petition . . . does not fall within the narrow exception recognized by *Hill* because he was sentenced post *Booker* in 2009, under the advisory sentencing guidelines."); *Anderson v. Ormond*, ___ F. Supp. 3d ___, ___, No. 6:18-CV-254-CHB, 2018 WL 6594539, at *3-4 (E.D. Ky. Dec. 14, 2018) ("Anderson was sentenced in 2008, three years after *Booker* was decided, at a time when the Sentencing Guidelines were advisory rather than mandatory. He therefore fails to satisfy at least one of the requirements set forth in *Hill*[.] *Hill* itself is clear that only pre-*Booker* sentences may be challenged in a § 2241 petition, and that conclusion binds this Court."), *appeal filed*, No. 19-5010 (6th Cir. 2019).

*Hill* specifically addressed *only* "whether a misapplied sentence enhancement calculated under the mandatory Sentencing Guidelines Manual constitutes a fundamental error that may be redressed in a successive habeas corpus proceeding." 836 F.3d at 596. Although one subsequent panel—via footnoted dictum in an unpublished order—has questioned whether sentencing under mandatory Guidelines is a prerequisite to qualify for relief under *Hill*, *see Neuman v. United States*, No. 17-6100, 2018 WL 4520483, at *2 n.1 (6th Cir. May 21, 2018); *see also Thomson v. Terris*, No. 16-cv-14453, 2019 WL 108843, at *2 (E.D. Mich. Jan. 4, 2019); *Miller v. Batts*, No. 16-1213-JDT-egb, 2018 WL 5091906, at *3 n.3 (W.D. Tenn. Oct. 18, 2018), the Court's reading of *Hill* and related case law inescapably indicates that it is.

Apart from the primary *Snider*-centric reasons described above, *Hill* itself said so. *See* 836 F.3d at 599-600 ("reiterat[ing]"—implying that the latter formulation is merely a restatement of the former—"that our decision addresses only a narrow subset of § 2241 petitions," requiring that the prisoner be "sentenced under the mandatory guidelines regime pre-[*Booker*]"); *id.* at 600 ("Hill's challenge to his misapplied career-offender enhancement is properly brought under § 2241 *because he was sentenced under the mandatory Guidelines Manual*[.]" (emphasis added)).

*Hill*, further, strongly suggested—multiple times—such a result. *See id.* at 593 (italicizing "mandatory"); *id.* at 596 (emphasizing that the case only presented a prong 3 question under "mandatory Sentencing Guidelines"); *id.* (stating that § 2241 may provide relief "when a sentence exceeds the maximum prescribed by statute"); *id.* at 598 n.5 (specifically flagging and differentiating Seventh Circuit precedent on which *Hill* relied with separate Seventh Circuit precedent that rejected analogous relief "where the prisoner was sentenced under the advisory Guidelines Manual"); *id.* at 599 (reminding the reader that "Hill was sentenced pre-*Booker*" and was "serving a sentence imposed under mandatory guidelines," which "shares similarities with serving a sentence imposed above the statutory maximum" and "raise[s] a fundamental fairness issue"). Judge Boom has, likewise, catalogued additional indicia, which the Court finds persuasive and incorporates here by reference. *See Anderson*, 2018 WL 6594539, at *3-4. Indeed, the Circuit itself has subsequently characterized *Hill* as addressing only such an issue. *See Snider*, 908 F.3d at 192 n.5; *see also Lester v. Flournoy*, 909 F.3d 708, 713-14 (4th Cir. 2018) (same); *Wilson v. Lowry*, No. 98-177 (SRN), 2017 WL 5158654, at *2 n.3 (D. Minn. Nov. 7, 2017) (same);

7

*Terry v. Shartle*, No. CV-15-107-TUC-CKJ (EJM), 2017 WL 2240970, at *11 (D. Ariz. May 23, 2017) (same). The Court denies Shelton's petition on this discrete basis.

Shelton's claims also fail on the merits. As to prong 2 of § 4B1.1(a), Shelton's federal felony bank robbery conviction (per the below modified categorical analysis) is a proper career offender predicate. *See United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016) (holding that bank robbery "by force and violence, or by intimidation" under 18 U.S.C. § 2113(a) is categorically a crime of violence). Shelton's argument regarding § 2113(a), really, is that *Mathis* eliminated the modified categorical approach as a career-offender-predicate assessment tool, thus rendering (per the logic of *McBride*) all of § 2113(a) outside the "crime of violence" universe. *See* DE ##1, at 5; 1-1, at 3, 9-10. That, as a legal matter, is wrong. *Mathis* itself approved use of the modified categorical approach "as a tool to identify the elements of the crime of conviction[.]" 136 S. Ct. at 2253; *see also, e.g.*, *United States v. Burris*, 912 F.3d 386, 393 (6th Cir. 2019) (en banc) (post-*Mathis*, endorsing continued use of, and describing how to properly employ, the modified categorical approach).

*McBride* rightly, even in light of the subsequent *Mathis*, conducted a divisibility inquiry and explained that § 2113(a) lists divisible elemental sets, not alternative means of committing one crime. *See* 826 F.3d at 296 (using "elements"); *see also Johnson v. United States*, No. 18-6080, 2019 WL 193916, at *2 (6th Cir. Jan. 4, 2019) (declining to question *McBride* post-*Mathis*); *In re McComb*, 691 F. App'x 819, 820 (6th Cir. 2016) ("McComb's reliance on *Mathis* is unavailing because 18 U.S.C. § 2113(a), the federal bank robbery statute, 'contain[s] a divisible set of elements,' not a single set of elements that can be met by various means. *McBride*, 826 F.3d at 296. Use of the modified categorical approach

8

remains appropriate in these circumstances, and it is undisputed that McComb's offenses fall under the set of elements that involve the use of force and thus constitute crimes of violence."); *United States v. Watson*, 881 F.3d 782, 786 (9th Cir. 2018) (post-*Mathis*, holding § 2113(a) divisible); *United States v. Rinker*, 746 F. App'x 769, 772 (10th Cir. 2018) (same); *United States v. Wilson*, 880 F.3d 80, 84 n.3 (3d Cir. 2018) (noting the parties' non-contestation of the district court's determination that § 2113(a) is divisible). These cases and principles preclude Shelton's argument to the contrary. *See* DE #1-1, at 9.

Under *McBride*'s teaching that § 2113(a) has "a divisible set of elements," the Court properly looks to *Shepard* documents (such as the indictment, plea agreement, and plea colloquy) to "determine which alternative [set of elements] formed the basis of the defendant's prior conviction." *See Burris*, 912 F.3d at 393. Here, the answer is easy. The grand jury charged that Shelton "by force, violence and intimidation did take from the person or presence of another money and other property and thing of value, namely $17,034.01 in United States currency, belonging to and in the care, custody, control, management, and possession of the First Financial Bank[.]" DE #19, at 4, case no. 2:13-CR-29-WTL-CMM. In the plea agreement, Shelton admitted, as an essential element, acting "to take such money by force and violence, or by intimidation." DE #79, at 3, case no. 2:13-CR-29-WTL-CMM. Shelton's § 2113(a) conviction therefore "falls under the first set of elements listed" and qualifies, under *McBride*, related case law, and the modified categorical approach, as a proper career offender qualifying offense. *See* 826 F.3d at 296.

Likewise, as relevant to prong 3 of § 4B1.1(a), the Seventh Circuit (which hears appeals from Indiana federal courts) held, after *Mathis* (and *Castleman*), a conviction under Ind. Code § 35-42-5-1 to be a valid career offender qualifying offense. *See United States*

9

*v. Armour*, 840 F.3d 904, 907 (7th Cir. 2016); *see also United States v. Duncan*, 833 F.3d 751, 756-58 (7th Cir. 2016) (same result under ACCA); *United States v. Patterson*, 853 F.3d 298, 304-05 (6th Cir. 2017) (approvingly quoting and citing *Duncan*). Judge Lawrence explained at sentencing that Shelton has "two [such] prior felony robbery convictions," DE #120 (Sent. Tr.), at 5, case no. 2:13-CR-29-WTL-CMM, satisfying § 4B1.1(a) prong 3's numerosity requirement. *See also* DE ##92-2, 92-3, 92-4, & 92-5, case no. 2:13-CR-WTL-CMM.

Shelton, to be sure, makes plain his manifold disagreement with this line of decisions (including *Duncan* and *United States v. Lewis*, 405 F.3d 511 (7th Cir. 2005)), mostly by repeating arguments that the Seventh Circuit considered and rejected. *See* DE #1-1, at 8 (accusing the Seventh Circuit of using "invalid" reasoning, "legislating from the bench," and "adding words to [the] statute"). The Court, on full review, sees no reason to question or depart from the Seventh Circuit's persuasive opinions on the topic,[4] which rely on and faithfully follow Indiana law. *See also United States v. Coblentz*, 274 F. App'x 651, 654-55 (10th Cir. 2008).

Shelton's argument concerning paper airplanes and snowballs, *see* DE #1-1, at 8, 10, appears to be grafted from *Duncan*'s discussion of a separate case that addressed Indiana's misdemeanor battery statute, which, as *Duncan* points out, merely requires intent

---

[4] Even if they, technically, do not bind this Court. *See, e.g.*, *Burris*, 912 F.3d at 408 (Thapar, J., concurring) ("Each circuit decides for itself whether a crime qualifies as a crime of violence." (citing examples)); *see also, e.g.*, *Shepherd v. Krueger*, 911 F.3d 861, 863 (7th Cir. 2018) ("The Sixth Circuit held recently that Kentucky second-degree burglary qualifies as a predicate offense for an ACCA enhancement. . . . Our colleagues' statutory interpretation and conclusion are persuasive. We see no reason to disagree, whether we have the right and power to disagree or not.").

to *touch*, not intent to *injure*. *See* 833 F.3d at 755-56; *see also Flores v. Ashcroft*, 350 F.3d 666, 669 (7th Cir. 2003) (discussing snowball and paper airplane hypotheticals in context of the "touching" element of Indiana misdemeanor battery). In the robbery context, however, "fear" under Indiana law means "fear of physical injury," not fear of a mere touching. *Duncan*, 833 F.3d at 755; *Lewis*, 405 F.3d at 514.

*Duncan* also persuasively rejects Shelton's related degree-of-force arguments. *See* 833 F.3d at 756; *see also Flores*, 350 F.3d at 670 (assessing "injury" in a tiered statutory scheme different from Indiana robbery); *Stokeling v. United States*, 139 S. Ct. 544, 552-55 (2019). "Physical injury," as Indiana robbery contemplates, satisfies § 4B1.2's requirement of "physical force." *Duncan*, 833 F.3d at 756 ("If he means to argue that putting someone in fear of something as minor as a bruise or simple physical pain cannot qualify as a violent felony, the case law rejects that position."); *id.* ("The fact that § 35-42-5-1(2) requires a fear of only 'bodily injury' instead of 'moderate' or 'severe' bodily injury . . . does not exclude it from counting as a violent felony[.]"); *id.* ("[A] conviction for Indiana robbery by fear requires a fear of bodily injury. . . . Logically, this would require proof that the robber put the victim in fear that the robber was prepared to use . . . 'force capable of causing physical pain or injury to another person,' . . . which can include force such as a slap in the face.").[5] *United States v. Castleman*, 134 S. Ct. 1405 (2014), which Shelton

---

[5] Shelton's fanciful notion that an Indiana robber could validly put his victim in fear via threat of a paper airplane barrage or snowball onslaught demands that the Court "resist imagining unlikely crimes that theoretically could be covered[.]" *United States v. Verwiebe*, 874 F.3d 258, 260-61 (6th Cir. 2017). Instead, "there must a realistic probability, not a theoretical possibility, that [Indiana] would apply its statute" in such a manner. *Burris*, 912 F.3d at 398 (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1685 (2013)). The Court sees no realistic probability of such, here, and Shelton cites no Indiana case with similarly unusual facts.

cites, *see* DE #1-1, at 10, concerned only the variant meaning of "force" in 18 U.S.C. § 921(a)(33)(A)'s definition of "misdemeanor crime of domestic violence" and thus does not alter this result. *See Stokeling*, 139 S. Ct. at 554 (clarifying that *Castleman* did not decide "whether . . . conduct that leads to relatively minor forms of injury," such as a "bruise," necessitated the use of qualifying force); *United States v. Glover*, 681 F. App'x 432, 434 (6th Cir. 2017). Force sufficient to bruise is force "capable of causing physical pain or injury." *Stokeling*, 139 S. Ct. at 553; *Castleman*, 134 S. Ct. at 1421 (Scalia, J., concurring in the judgment); *Duncan*, 833 F.3d at 756.

Putting the substantive pieces together, even after *Mathis*, Shelton meets the three career offender prongs: he was (as he does not challenge) at least 18 at the relevant time, an offense of conviction is (still) a felony crime of violence, and he has (still) at least two prior felony convictions of crimes of violence. *See* U.S.S.G. § 4B1.1(a). Petitioner is, therefore, substantively entitled to no relief.

Accordingly, per this analysis, the Court **DISMISSES** Shelton's § 2241 petition (DE #1) and will enter a separate Judgment.

This the 8th day of February, 2019.

Signed By:
*Robert E. Wier* REW
United States District Judge